UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Troy Ray Emanuel, Jr., <br><br> Plaintiff <br><br> v. <br><br> Brandon Silber, et al., <br><br> Defendants | Case No.: 2:24-cv-01340-APG-NJK <br><br> **Order Screening Complaint and Denying Motions** <br><br> [ECF Nos. 3, 4, 5] |

Troy Emanuel, who is in the custody of the Nevada Department of Corrections (NDOC), has filed a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed in forma pauperis. ECF Nos. 1, 1-1. He also moves for expedited screening and a temporary restraining order. ECF Nos. 3, 4, 5. I will temporarily defer the matter of the filing fee. I now screen Emanuel's civil rights complaint and deny his motions.

**I.  SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of

the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

All or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.   SCREENING OF COMPLAINT

The events of the complaint happened while Emanuel was housed at Ely State Prison (ESP) and High Desert State Prison (HDSP). After Emanuel was stabbed by two inmates he was classified as having a high-risk potential (HRP) and placed in solitary confinement where he is locked down 24 hours a day. Solitary confinement is "messing" with Emanuel's mental health.

Exhibits attached to the complaint purport to show that Emanuel was classified as HRP in June 2023. A hearing was held on August 31, 2023 in which the warden, associate warden, and

caseworkers determined to keep Emanuel on HRP status because he had not been incident free for six months. And in June 2024, the classification committee twice determined to keep Emanuel in solitary confinement.

Based on these allegations, Emanuel sues Brandon Silber, A. Moore, T. Cooke, S. Roman, P. Hernandez, Gitter, Drummond, Bean, Williams, and Kuloloia. He seeks monetary and injunctive relief. I liberally construe the complaint as bringing claims based on three different theories of liability: (1) under the First Amendment about retaliation; (2) under the Eighth Amendment about solitary-confinement conditions; and (3) under the Fourteenth Amendment about due-process in administrative segregation.

### A. First Amendment retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a colorable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567–68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568–69. A plaintiff who fails to allege a chilling effect may still state a claim if

he alleges that he suffered some other harm that is more than minimal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Emanuel fails to state a colorable First Amendment retaliation claim. He concludes that his HRP classification and placement in solitary confinement constitute retaliation. But he pleads no facts supporting most elements of this claim. For instance, Emanuel does not allege facts showing that he filed a lawsuit or grievance about prison conditions, that any defendant took adverse action because of his lawsuit or grievance, and their adverse actions did not reasonably advance a legitimate correctional goal. The First Amendment retaliation claim is therefore dismissed without prejudice, and Emanuel is granted leave to amend this claim.

### B. Eighth Amendment solitary-confinement conditions

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685 (1978), *abrogation on other grounds recognized by Dep't of Agriculture Rural Develop. Rural Housing Serv.*, 601 U.S. 42 (2024). And long-term solitary confinement may violate the Eighth Amendment. *See Davis v. Ayala*, 576 U.S. 257, 287–290 (2015) (Kennedy, J., concurring). But allegations that Emanuel is being held in solitary confinement where he's locked down for 24 hours a day and this is "messing" with his mental health are not sufficient to state those conditions violate the Eighth Amendment. For instance, Emanuel does not plead facts explaining the solitary confinement conditions that he experienced at ESP and HDSP, how long he has been in solitary confinement at either institution, or how that placement has affected his mental health. The Eighth Amendment claim about solitary-

5

confinement conditions is therefore dismissed without prejudice, and Emanuel is granted leave to amend this claim.

### C. Fourteenth Amendment Due Process Clause administrative segregation

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). When analyzing a due-process claim, courts engage in a two-step analysis: (1) "determine whether the inmate was deprived of a constitutionally protected liberty or property interest" and (2) "examine whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). To show a due-process violation, an inmate must therefore establish a liberty interest in avoiding the subject housing placement. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "The Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement, but such an interest may 'arise from state policies or regulations.'" *Johnson*, 55 F.4th at 1180 (quoting *Wilkinson*, 545 U.S. at 221–22). "An interest in avoiding certain conditions of confinement constitutes a liberty interest protected by the Due Process Clause if the challenged condition 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (quoting *Johnson*, 55 F.4th at 1180; and *Sandin v. Conner*, 515 U.S. 472, 484, (1995)).

When a liberty interest exists and a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin*,

515 U.S. 472.  After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9.  An inmate has the right to notice and the right to be heard. *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992), *overruled on other grounds by Sandin*, 515 U.S. 483–84 (rejecting method of examining prison regulations to determine if a liberty interest exists).  The Ninth Circuit has held that where the prisoner alleges material differences between the conditions in general population and administrative segregation, the prisoner's procedural due process claim should not be dismissed on the pleadings. *See Jackson v. Carey*, 353 F.3d 750, 755–57 (9th Cir. 2003).

      Emanuel might be attempting to state due-process claims based on his HRP classification, placement in solitary confinement at ESP, and placement in solitary confinement at HDSP.  Any claim based on Emanuel's classification status is a non-starter because prisoners do not have a liberty interest in their classification status or avoiding transfer to another prison. *See e.g.*, *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (security classification); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (intrastate prison transfer); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983) (classification and interstate prison transfer), *abrogated in part on other grounds by Sandin*, 515 U.S. 472; *Rizzo v. Dawson*, 778 F.2d 527, 530–31 (9th Cir. 1985) (prison transfer and rehabilitation like vocational courses).

      Emanuel fails to state a colorable claim about his placement in administrative segregation.  First, there are no factual allegations about Emanuel's conditions in administrative segregation at either prison, let alone facts to plausibly state those conditions are substantially more restrictive than conditions in either prison's general population such that he had a liberty interest in avoiding being placed in administrative segregation at either prison. *See Johnson*, 55 F.4th at 1180 (finding liberty interest exists where placement in Browning Unit entailed inmate

7

1 being confined in his cell 24 hours per day, strip searched every time he left the cell, taking
2 meals in his cell, and limited access to rehabilitation programs).  Second, there are no factual
3 allegations that Emanuel was not afforded sufficient process regarding his placement in
4 administrative segregation at either prison.  The Fourteenth Amendment due-process claims
5 about placement in administrative segregation are therefore dismissed without prejudice, and
6 Emanuel is granted leave to amend these claims.

### III.    LEAVE TO AMEND

Emanuel has leave to file a first amended complaint to attempt to replead his First, Eighth, and Fourteenth Amendment claims.  If Emanuel chooses to amend one or more of these claims, he should state facts supporting the defects identified above.  He does not have leave to add new claims.

If Emanuel chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  This means the amended complaint must contain all claims and defendants that Emanuel intends to pursue in this action.  Emanuel should file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be titled "First Amended Complaint."  Emanuel must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege facts sufficient to show what each defendant did to violate his civil rights.

### IV.    MOTIONS FOR RELIEF

Emanuel moves for expedited screening, vaguely arguing that he's in imminent danger and asks me to look at his other lawsuits. ECF No. 3.  This motion is denied because it is moot.

Emanuel also moves for a temporary restraining order to stop officials from stealing his blood and music and using a "spirit" to sexually abuse him and to remove him from HRP status and release him early from incarceration. ECF Nos. 4, 5.  The first of these motions is titled "Motion to Demand Jury Trial." ECF No. 4.  I disregard this request because the motion argues about matters unrelated to a jury demand and Emanuel selected the "Jury Trial Demanded" box on the title page of his complaint. *See* ECF No. 1-1 at 1.  And I deny both motions because there are no colorable claims pending about any of the matters raised in them. *See Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636–37 (9th Cir. 2015) (explaining that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint" and "[a]bsent that relationship or nexus, the district court lacks authority to grant the relief requested").

      Emanuel is advised that restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20.  The Supreme Court clarified the standard for these forms of equitable relief in *Winter v. Natural Resources Defense Council, Inc.*, instructing that the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20.  The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a

preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

But a plaintiff who seeks a mandatory injunction—one that goes beyond simply maintaining the status quo during litigation—bears a "doubly demanding" burden: "[he] must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored" and "should not issue in doubtful cases." *Id.* (cleaned up). And the PLRA similarly instructs that any restraining order or preliminary injunction granted with respect to prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Additionally, a prisoner seeking a remedy for unsafe conditions does not have to await a tragic event such as an actual assault before obtaining relief. *Farmer v. Brennan*, 511 U.S. 825, 845 (1970). But "[a]n inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue must adequately plead such a violation." *Id*. at 845–46 (cleaned up). And the inmate must demonstrate that prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Id*. at 846. But the fact "[t]hat prison officials' current attitudes and conduct must be assessed in an action for injunctive relief does not mean, of course, that inmates are free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court." *Id.* (cleaned up).

10

## V.   CONCLUSION

I THEREFORE ORDER that a decision on the application to proceed in forma pauperis (ECF No. 1) is deferred.

I FURTHER ORDER that the First Amendment retaliation claim is dismissed without prejudice and with leave to amend.

I FURTHER ORDER that the Eighth Amendment claim about solitary-confinement conditions is dismissed without prejudice and with leave to amend.

I FURTHER ORDER that the Fourteenth Amendment claims about due process in administrative segregation are dismissed without prejudice and with leave to amend.

I FURTHER ORDER that all defendants are dismissed without prejudice from this action.

I FURTHER ORDER that the motions for various pretrial equitable relief (ECF Nos. 3, 4, 5) are denied.

I FURTHER ORDER that the plaintiff has until **February 3, 2025** to file a first amended complaint.  If the plaintiff fails to timely comply with this order, this action will be subject to dismissal without prejudice and without further warning.

The Clerk of Court is directed to file the complaint and exhibits (ECF Nos. 1-1, 1-2) and send the plaintiff courtesy copies of those documents and the approved form for filing a 42 U.S.C. § 1983 complaint with instructions.

Dated: January 1, 2025

_____
Andrew P. Gordon
Chief United States District Judge